UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHONTTAYE THOMAS,

   Plaintiff,

-vs-                                            Case No. 23-cv-10444

GROUND EFFECTS LLC,             Hon.

   Defendant.

---

Darcie R. Brault (P43864)
McKnight, Canzano, Smith,
Radtke & Brault, P.C.
423 N. Main St. Ste. 200
Royal Oak, MI 48220
(248) 354-9650
dbrault@michworkerlaw.com
*Attorneys for Plaintiff*

---

**COMPLAINT AND JURY DEMAND**

    Plaintiff, Shonttaye Thomas, by his counsel, McKnight, Canzano, Smith, Radtke & Brault, PC, states as follows as his Complaint against Ground Effects LLC:

**JURISDICTION AND VENUE ALLEGATIONS**

    1.    This is an action brought for Defendants' violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq*, the

1

Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101, *et seq.,* the Americans with Disabilities Act, as amended, ("ADA"), 42 U.S.C. § 12101, *et seq*, the Michigan Persons with Disabilities Civil Rights Act ("PDCRA"), MCL § 37.1101, *et seq*, and the Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2601, *et seq*.

2. This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as it is a civil action arising under the laws of the United States.

3. This court has ancillary jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Plaintiff Shonttaye Thomas is a resident of the City of Detroit, Wayne County, State of Michigan.

5. Defendant Ground Effects LLC is a Delaware limited liability company.

6. The events giving rise to this cause of action occurred in the City of Warren, State of Michigan.

## GENERAL ALLEGATIONS

7. Plaintiff Thomas is African American.

8. Plaintiff Thomas was employed by Defendant Ground Effects LLC beginning in February of 2018 as a Utility Worker.

9. On or about November 12, 2019, Thomas applied for a Maintenance Technician position.

2

10. Defendant determined that he was "not ready."

11. Also in November of 2019, Thomas applied for a Production Team Lead.

12. A Caucasian employee was selected for the Team Lead position.

13. In December of 2019, Defendant posted a "Maintenance Lead" opportunity.

14. Thomas expressed interest in the position and applied.

15. On December 10, 2019, Defendant offered the Maintenance Lead position to a Caucasian employee who was not qualified for the position.

16. Defendant asked Thomas to train the Caucasian Maintenance Lead.

17. The Caucasian Maintenance Lead was not required to do the regular work and instead, Defendants assigned the work to Thomas.

18. A massive investigation was commenced by Defendants when the Caucasian Maintenance Lead claimed he was being harassed.

19. Caucasian employees of Defendant engaged in disruptive and unprofessional conduct and were not disciplined, whereas any issues with African American employees resulted in immediate discipline, including, often, termination.

20. The Caucasian Maintenance Lead was terminated because of his inability to successfully complete his probationary period, citing attendance issues.

21. Because the Maintenance Lead position was again open, Thomas

expressed interest and applied.

22. Defendant never responded to his request to be considered for the Maintenance Lead position.

23. Defendant hired another Caucasian employee to be the Maintenance Lead.

24. Thomas worked directly under the Maintenance Lead, doing Maintenance work, still paid as a Utility Worker.

25. On or about January 10, 2020, Thomas applied for a Maintenance Technician position.

26. Defendant contends that neither Thomas nor any other applicant was hired for the Maintenance Technician position because there were no "viable candidates."

27. Thomas, as a Utility Worker, essentially did the work of Maintenance Technician at a lower hourly rate.

28. Despite frequent turnover in the higher paying Maintenance positions, Defendant either failed to fill the position or hired/placed Caucasian employees into the open roles.

29. While there are African American employees at Ground Effects, LLC, there are few in the higher paying positions which are almost exclusively held by Caucasian employees.

30. On January 27, 2020, Thomas submitted his first complaint of race discrimination to the EEOC.

31. In May of 2020, Defendants, through their attorneys, filed a position statement with the EEOC in response to Thomas' charge essentially claiming that Thomas had either not applied for positions or was deemed unqualified.

32. Upon information and belief, Defendants failed to adequately investigate Thomas' complaints of race discrimination.

33. Thomas continued to apply for Maintenance Technician positions.

34. The positions were either not filled or awarded to Caucasian employees.

35. Thomas was denied training, while Caucasian employees were trained.

36. Caucasian employees were valued by Defendant, whereas African American employees were expendable.

37. In August of 2020, Thomas was afforded FMLA leave for a serious health condition related to COVID-19, a cardiac condition, and his diabetes.

38. When Thomas returned to work he was advised that he "quit" and that all of his time off was unexcused.

39. After he was able to straighten out the issues with his leave, he returned to work.

40. Defendant retaliated against him by refusing to allow him to work with accommodations.

5

41. On September 21, 2020, Thomas filed a second EEOC charge alleging race discrimination, retaliation and disability discrimination.

42. In October of 2020, Thomas was again rejected for a position in Maintenance in favor of a Caucasian employee.

43. At the end of 2020 and the beginning of 2021, Thomas did not receive an annual raise, though, upon information and belief, all of the other employees did.

44. Thomas continued to work under very difficult conditions: He was denied every promotional opportunity, he was denied the opportunity to earn more, he was denied training, he was treated differently compared to the Caucasian employees. After he filed his charges of discrimination, he was refused accommodations and his work was subject to unfair scrutiny and criticism. This led to his decision that no reasonable person would remain in Defendant's employment under the circumstances and he "quit," though Plaintiff contends his separation was a constructive discharge.

45. On November 29, 2023, the EEOC issued "Notice of Right to Sue" letters to Plaintiff with respect to both charges.

46. This Complaint is filed within the ninety days required under the "Right to Sue" letter issued by the EEOC.

**COUNT I**
**VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT**
(Race Discrimination)

47. Plaintiff incorporates by reference paragraphs 1 through 46 as fully set forth herein.

48. Title VII prohibits race discrimination in employment.

49. GROUND EFFECTS LLC is an employer within the meaning of Title VII.

50. GROUND EFFECTS LLC violated Title VII by discriminating against Thomas on the basis of his race, by:

   a. Refusing and failing to promote Thomas out of his entry level position, in favor of Caucasian employees who were less or equally qualified;

   b. Refusing and failing to pay African American employees as much as the Caucasian employees doing the same work;

   c. Treating Thomas less favorably compared to Caucasian workers in job assignments, training opportunities, and other terms and conditions of employment;

   d. Refusing and failing to adequately investigate Plaintiff's complaints of discrimination;

   e. Constructively discharging Plaintiff, and

   f. Other acts of discrimination not yet known to Plaintiff.

51. The above-described violations of Title VII were intentional or in reckless disregard of Thomas' federally protected rights.

52. As a direct and proximate result of the aforementioned violations, Thomas has been damaged.

WHEREFORE Thomas respectfully requests this Court to enter a judgment in his favor and against Defendant as follows:

    A.    Economic damages based on his lost wages and fringe benefits, both past and future;

    B.    Non-economic damages for injuries such as emotional distress, pain and suffering, harm to reputation, and other consequential injuries;

    C.    Punitive damages;

    D.    Attorney fees and costs; and

    E.    Such other relief as may be deemed appropriate at the time of final judgment.

## COUNT II
## VIOLATIONS OF MICHIGAN'S ELLIOT LARSEN CIVIL RIGHTS ACT
(Race Discrimination)

53. Plaintiff incorporates by reference paragraphs 1 through 52 as fully set forth herein.

54. Michigan's ELCRA prohibits race discrimination in employment.

55. Defendant violated the ELCRA by discriminating against Thomas on the basis of his race, by:

    a. Refusing and failing to promote Thomas out of his entry level position, in favor of Caucasian employees who were less or equally qualified;

    b. Refusing and failing to pay African American employees as much as the Caucasian employees doing the same work;

    c. Treating Thomas less favorably compared to Caucasian workers in

       job assignments, training opportunities, and other terms and conditions of employment;

   d. Refusing and failing to adequately investigate Plaintiff's complaints of discrimination;

   e. Constructively discharging Thomas; and

   f. Other acts of discrimination not yet known to Plaintiff.

56. Plaintiff has suffered significant damages as a result of GROUND EFFECT's intentional violations of the ELCRA.

WHEREFORE Plaintiff Thomas respectfully requests this Court to enter a judgment in his favor and against Defendant as follows:

   A. Economic damages based on his lost wages and fringe benefits, both past and future;

   B. Non-economic damages for injuries such as emotional distress, pain and suffering, harm to reputation, and other consequential injuries;

   C. Attorney fees and costs;

   D. Appropriate equitable relief, including an injunction against further discriminatory acts; and

   E. Such other relief as may be deemed appropriate at the time of final judgment.

## COUNT III
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT
(Denial of a Reasonable Accommodation and Discrimination Based on Disability)

57. Plaintiff incorporates by reference paragraphs 1 through 56 as fully set forth herein.

58. Plaintiff was an individual with a disability because he had diabetes, a cardiac condition that required a heart monitor and long-term effects of COVID-19 infection.

59. Plaintiff was a "qualified individual with a disability" because he could perform the essential functions of his job with a reasonable accommodation. *See*, 42 U.S.C. § 12111(8).

60. Defendant had actual and constructive notice of Plaintiff's need for a reasonable accommodation for his disabilities, and Defendant was required to provide Plaintiff with a reasonable accommodation that would allow him to perform the essential functions of his job and achieve an equal employment opportunity. 42 U.S.C. § 12111(9).

61. Defendant failed to engage in an interactive process with Plaintiff. *See* 29 C.F.R. § 16302(o)(3).

62. Defendant discriminated against Plaintiff, on the basis of his disability, when it denied him an appropriate and reasonable accommodation that would have allowed him to achieve an equal employment opportunity with Defendant, in violation of the ADA, 42 U.S.C. § 12112(5).

63. Defendant further discriminated against Plaintiff because of his disabilities, to wit:

   a. Failed to undertake an investigation of his complaints of discrimination and retaliation;

  b. Assigned him to duties known to fall outside his needed accommodation;

  c. Unfairly scrutinized Plaintiff's work;

  d. Threatened him with termination; and

  e. Other acts of discrimination yet to be discovered.

64. These actions were taken against Plaintiff intentionally or with reckless disregard of his rights under the ADA.

65. Plaintiff has suffered significant damages as a result of Defendant's intentional violations of the ADA.

WHEREFORE Plaintiff Thomas respectfully requests this Court to enter a judgment in his favor and against Defendant as follows:

  A. Economic damages based on his lost wages and fringe benefits, both past and future;

  B. Non-economic damages for injuries such as emotional distress, pain and suffering, harm to reputation, and other consequential injuries;

  C. Punitive damages;

  D. Attorney fees and costs;

  E. Appropriate equitable relief, including an injunction against further discriminatory acts; and

  F. Such other relief as may be deemed appropriate at the time of final judgment.

## COUNT IV
## VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

(Denial of a Reasonable Accommodation and Discrimination Based on Disability)

66. Plaintiff incorporates by reference paragraphs 1 through 65 as fully set forth herein.

67. Plaintiff is and was an individual with a disability because he has a determinable physical characteristic, resulting from injury, which substantially limits one or more major life activity and is unrelated to his ability to his job qualifications; he has a history of said disability; and was and is regarded as having such a disability by Defendant. MCL § 37.1103.

68. Plaintiff was a qualified individual with a disability because he could perform his job with or without a reasonable accommodation.

69. Defendant employed Plaintiff and is an employer within the meaning of the PDCRA. MCL § 37.1201 (b).

70. Defendant had actual and constructive notice of Plaintiff's need for a reasonable accommodation for his disabilities.

71. Defendant failed to accommodate Plaintiff in violation of MCL § 37.1102 (2).

72. Defendant discriminated against Plaintiff, on the basis of his disabilities, when it denied him an appropriate and reasonable accommodation that would have allowed him to achieve an equal employment opportunity with

Defendant, in violation of MCL § 37.1102 (1).

73. Defendant further discriminated against Plaintiff because of his disabilities in violation of MCL § 37.1102 (1), to wit:

   a. Failed to undertake an investigation of his complaints of discrimination and retaliation;

   b. Assigned him to duties known to fall outside his needed accommodation;

   c. Unfairly scrutinized Plaintiff's work;

   d. Threatened him with termination; and

   e. Other acts of discrimination yet to be discovered.

74. Plaintiff has suffered significant damages as a result of Defendant's intentional violations of the PDCRA.

WHEREFORE Plaintiff Thomas respectfully requests this Court to enter a judgment in his favor and against Defendant as follows:

   A. Economic damages based on his lost wages and fringe benefits, both past and future;

   B. Non-economic damages for injuries such as emotional distress, pain and suffering, harm to reputation, and other consequential injuries;

   C. Attorney fees and costs; and
   D. Such other relief as may be deemed appropriate at the time of final judgment.

## COUNT VI
## RETALIATION IN VIOLATION OF TITLE VII AND THE AMERICANS WITH DISABILITIES ACT

75. Plaintiff incorporates by reference paragraphs 1 through 74 as fully set forth herein.

76. Plaintiff engaged in protected activity under Title VII and the ADA when he complained that he was being discriminated against and not being appropriately accommodated and when he filed charges with the EEOC.

77. Defendant was aware of that protected activity.

78. Defendant took adverse action against Thomas because of that protected activity, to wit:

    a. Failed to undertake an investigation of his complaints of discrimination and retaliation;

    b. Unfairly scrutinized Plaintiff's work;

    c. Assigned Plaintiff to work known to be outside of his medical restrictions;

    d. Threatened him with termination;

    e. Constructively discharged Thomas; and

    f. Other acts of retaliation yet to be discovered.

79. These actions were taken against Plaintiff intentionally or in reckless disregard of his rights under Title VII and the ADA.

80. Plaintiff has suffered significant damages as a result of Defendant's intentional violations of Title VII and the ADA.

WHEREFORE Plaintiff Thomas respectfully requests this Court to enter a

judgment in his favor and against Defendant as follows:

    A.    Economic damages based on his lost wages and fringe benefits, both past and future;

    B.    Non-economic damages for injuries such as emotional distress, pain and suffering, harm to reputation, and other consequential injuries;

    C.    Punitive damages;

    D.    Attorney fees and costs; and

    E.    Such other relief as may be deemed appropriate at the time of final judgment.

## COUNT VII
## RETALIATION IN VIOLATION OF THE ELCRA and PDCRA

81. Plaintiff incorporates by reference paragraphs 1 through 80 as fully set forth herein.

82. Plaintiff engaged in protected activity under the ELCRA and the PDCRA when he complained of race discrimination and that he was not being appropriately accommodated and when he filed charges with the EEOC.

83. Both the ELCRA and the PDCRA prohibit retaliation against a worker who exercises their rights under the Acts.

84. Defendant was aware of that protected activity.

85. GROUND EFFECTS LLC took adverse action against Thomas because of that protected activity, to wit:

    a. Failed to undertake an investigation of his complaints of

      discrimination and retaliation;

   b. Unfairly scrutinized Plaintiff's work;

   c. Assigned Plaintiff to work known to be outside of his medical restrictions;

   d. Threatened him with termination;

   e. Constructively discharged Thomas; and

   f. Other acts of retaliation yet to be discovered.

86. Plaintiff has suffered significant damages as a result of Defendant's intentional violations of the ELCRA and the PDCRA.

WHEREFORE Plaintiff Thomas respectfully requests this Court to enter a judgment in his favor and against Defendant as follows:

   A. Economic damages based on his lost wages and fringe benefits, both past and future;

   B. Non-economic damages for injuries such as emotional distress, pain and suffering, harm to reputation, and other consequential injuries;

   C. Attorney fees and costs; and

   D. Such other relief as may be deemed appropriate at the time of final judgment.

## COUNT VIII
## VIOLATION OF THE FMLA

87. Plaintiff incorporates by reference paragraphs 1 through 86 as fully set forth herein.

88. Defendant is an employer and "covered entity" as defined under the FMLA.

89. Thomas was an "employee" within the meaning of the FMLA.

90. As an "employer" under the FMLA, Defendant owed Plaintiff a duty not to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under the Act.

91. Plaintiff was an "eligible employee" when he suffered a "serious health condition."

92. Plaintiff was entitled to intermittent and emergent leave in August of 2020.

93. Defendant violated the FMLA when it:

    a. Threatened to terminate Plaintiff;

    b. Advised Plaintiff his absences were unexcused;

    c. Failed to provide appropriate notice of FMLA rights to Plaintiff;

    d. Discriminated against Plaintiff for having taken leave;

    e. Constructively discharging Plaintiff; and

    f. Other violations of the Act which have yet to be discovered.

94. Defendant willfully violated the FMLA in that it knew that such conduct was prohibited under the statute or acted in reckless disregard of whether such conduct was prohibited.

95. As a direct and proximate result of these FMLA violations, Plaintiff has suffered damages including, but not limited to lost wages, employment benefits, and other compensation, past and future.

96. Pursuant to the FMLA, Plaintiff is entitled to:

   a. All wages, salary, employment benefits, or other compensation denied or lost by reason of the violation;

   b. Interest;

   c. Liquidated damages;

   d. Attorney fees; and

   e. Other damages/remedies available under the law.

WHEREFORE Plaintiff prays for Judgment against Defendant in whatever amount the Court of Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, liquidated damages, costs and attorney fees.

                                            Respectfully submitted,

                                            McKNIGHT, CANZANO, SMITH
                                            RADTKE & BRAULT, P.C.

                                            By:   /s/ Darcie R. Brault
                                                Darcie R. Brault (P43864)
                                                Attorneys for Plaintiff
                                                423 N. Main St., Suite 200
                                                Royal Oak, MI  48067
                                                (248) 354-9650

February 21, 2023                        dbrault@michworkerlaw.com

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

>Respectfully submitted,
>
>McKNIGHT, CANZANO, SMITH
>RADTKE & BRAULT, P.C.
>
>By:  /s/ Darcie R. Brault
>     Darcie R. Brault (P43864)
>     Attorneys for Plaintiff
>     423 N. Main St., Suite 200
>     Royal Oak, MI  48067
>     (248) 354-9650
>     dbrault@michworkerlaw.com

Dated: February 21, 2023